## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JASON P. MICHEL**<br>4445 Hinesville Road<br>Shelby, OH 44875<br><br>and<br><br>**MELISSA J. MICHEL**<br>4445 Hinesville Road<br>Shelby, OH 44875<br><br>   Plaintiffs,<br><br> v.<br><br>**WELLS FARGO BANK, N.A.**<br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>   Defendant. | **COMPLAINT FOR DAMAGES**<br><br>JURY DEMAND ENDORSED HEREON |

  Plaintiffs Jason P. Michel and Melissa J. Michel, by and through counsel, state as follows for their Complaint against Wells Fargo Bank, N.A.:

### INTRODUCTION, PARTIES, JURISDICTION, AND VENUE

  1. Plaintiffs Jason P. Michel and Melissa J. Michel (collectively, "Plaintiffs" or the "Michels") were the owners of real property and improvements thereon located at and commonly known as 25 Williams Ct., Shelby, OH 44875 (the "Home").

  2. The Michels purchased the Home for the purposes of maintaining the home as their primary, principal residence and maintained the Home as such for a period of time.

1

3. Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") is an incorporated business under the laws of the State of Delaware that maintains its principal place of business at 101 N. Phillips Ave., Sioux Falls, SD 57104. Wells Fargo is a servicer for mortgage loans across the United States, including servicing mortgages for properties in the State of Ohio.

4. At all times relevant to the causes of action in this Complaint, Wells Fargo was the servicer of a note used to purchase the Home (the "Note") and a mortgage on the Home that secures the Note (the "Mortgage") (hereinafter collectively referred to as the "Loan"). *Copies of the Note and Mortgage are attached as* **Plaintiffs' Composite Exhibit 1**.

5. At all relevant times, Wells Fargo acted with the full authority of and as the servicing agent for the relevant owner, creditor, or assignee of the Loan.

6. Jurisdiction of claims against Wells Fargo is conferred by 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA). This action is further specifically filed, in part, to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35 and 1024.41 of Regulation X of RESPA.

7. This Court has supplemental jurisdiction to hear any state law claims pursuant to 28 U.S.C. § 1367.

8. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as the Michels purchased the Home and maintain the Home as their primary residence within the District, Wells Fargo does business in this District, and the conduct complained of took place primarily in this District.

## SUMMARY OF CLAIMS

9. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10. Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

11. The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

12. Wells Fargo is subject to the aforesaid regulations and each does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

13. The Michels assert a claim for relief against Wells Fargo for breaches of the specific rules under Regulation X as set forth, *infra*.

14. The Michels have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches of Regulation X and such action provides for remedies including actual damages, costs, statutory damages, and attorney's fees.

## STATEMENT OF FACTS

**The "Deed-in-Lieu" (DIL) Loss Mitigation Application and Review Process**

15. In or around early 2018, the Michels, with the assistance of Kathryn M. Eyster of McGookey Law Offices, an attorney representing the Michels for loss mitigation purposes

3

("Counsel"), submitted a loss mitigation application regarding the Home to Wells Fargo seeking a DIL loss mitigation agreement (the "Application").

16. On March 1, 2018, Counsel spoke with Deb Herr in Wells Fargo's deed-in-lieu department ("Herr") via telephone who advised the file pursuant to the Application was still in the home retention department even though Counsel had previously advised Wells Fargo on numerous occasions that the Michels were seeking a deed-in-lieu (DIL) rather than any retention options.

17. Herr subsequently advised Counsel on the March 1, 2018 telephone call that Herr was having the loan modification department move the Application file to the DIL department and that Counsel would hear from the DIL department in five (5) to seven (7) business days.

18. On March 29, 2018, having not heard from Wells Fargo's DIL department, Counsel called Herr again and was informed that the Application file was still with the loan modification department. Herr subsequently spoke with her supervisor who was to escalate the transfer of the Application file to the DIL department and subsequent review.

19. On April 18, 2018, Counsel personally met with Charlie Gleisner, the agent hired by Wells Fargo to inspect the Home ("Gleisner"), who took pictures of the Home for Wells Fargo.

20. Counsel advised Wells Fargo by letter dated April 19, 2018, that Gleisner's inspection of the Home had occurred as described.

21. Despite the foregoing, including the pending Application, Wells Fargo sent correspondence dated April 25, 2018, improperly threatening foreclosure action against the Michels if they did not pay the arrearages due on the Loan.

22. On April 27, 2018, Counsel again met with Gleisner who advised that Wells Fargo cancelled the prior inspection after he performed it and was hired to perform another inspection for which Wells Fargo presumably imposed a fee against the Loan.

23. Finally on May 7, 2018, Wells Fargo sent correspondence stating that the Michels were pre-approved for a DIL, and the Michels completed and executed the necessary documents and returned the same to Wells Fargo as instructed.

24. Soon thereafter, Wells Fargo sent correspondence along with the final DIL documents for the Michels' execution.

25. Counsel advised Daniel DeJesus of Wells Fargo on June 6, 2018, that the Michels would be executing and returning the DIL agreement as soon as possible.

26. The Michels executed the DIL agreement and Wells Fargo received the executed agreement on June 12, 2018.

27. Despite all of the foregoing, on July 12, 2018, Wells Fargo "dual-tracked" the Loan by referring the matter to a foreclosure attorney and filed a foreclosure complaint against the Michels initiating the case captioned or otherwise stylized as *Wells Fargo Bank, N.A. v. Jason P. Michel,* et al., Case No. 2018 CV 0471 in the Richland County Court of Common Pleas (the "Foreclosure"). *A copy of the docket for the Foreclosure is attached as* **Plaintiffs' Exhibit 2**.

28. On July 17, 2018, Counsel spoke with Megan Clair, Wells Fargo's Freddie Mac representative ("Clair"), who confirmed all documents for the DIL had been timely received, that there was nothing further for the Michels to do to effectuate the same, and that any further actions needed to effectuate the DIL were the responsibility of Wells Fargo.

29. On July 19, 2018, Clair called Counsel to advise she did not have a resolution but there was a "research ticket" opened.

### The Michels' Attempts to Resolve Errors Regarding the Loan

30. As the Foreclosure remained wholly active and with the Michels at risk for the negative effects thereof, the Michels took action to attempt to resolve the dual-tracking errors related to Wells Fargo's handling of the Application and subsequent DIL documents.

31. On or about July 25, 2018, the Michels, through Counsel, sent correspondence to Wells Fargo via Certified Mail captioned "NOTICE OF ERROR AND REQUEST FOR INFORMATION" ("NOE #1"). A copy of NOE #1 is attached as *Plaintiffs' Exhibit 3*.

32. Through NOE #1, the Michels alleged that Wells Fargo committed errors in relation to the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by dual-tracking the Michels and by generally mishandling the loss mitigation process concerning the Application, the DIL documents, and the initiation of the Foreclosure. See *Plaintiffs' Exhibit 3*.

33. The Michels sent NOE #1 to Wells Fargo at the address designated by Wells Fargo for the receipt of requests for information and notices of error (the "Designated Address"). See *Plaintiffs' Exhibit 3*.

34. With the Foreclosure still active, and with Wells Fargo not having responded to NOE #1 as of August 15, 2018, Counsel was caused to make an appearance in the Foreclosure on behalf of the Michels on or before August 14, 2018 via a motion seeking leave to file a responsive pleading in the Foreclosure as the deadline for the Michels to respond to the Foreclosure Complaint was imminent. See *Plaintiffs' Exhibit 2*.

35. Wells Fargo eventually moved to dismiss the Foreclosure on or about August 24, 2018. See *Plaintiffs' Exhibit 2*.

36. On or about August 28, 2018, Wells Fargo sent correspondence to the Michels in response to NOE #1 ("Response #1") whereby Wells Fargo stated, in pertinent part:

> We found that we initiated foreclosure on June 29, 2018, in error. On August 14, 2018, we updated the account that a Deed in Lieu was completed... We apologize for the inconvenience this may have caused...
> Your correspondence indicated our customer was not provided with loss mitigation options or timely loss mitigation options...The account was moved to the liquidations review process on March 29, 2018, due to the request for a Deed in Lieu. We apologize for this delay in the process.

*A copy of Response #1 is attached as **Plaintiffs Exhibit 4***.

37. Although the Foreclosure was dismissed and the DIL was effectuated, the Michels still had not been put back into the position that they would have been in but-for Wells Fargo's admitted errors on the Loan, or *status quo ante*; that is, Wells Fargo may have mitigated the harm to the Michels, but they did not fully correct their errors and the harm caused to the Michels.

38. As such, on or about September 12, 2018, the Michels, through Counsel, sent correspondence to Wells Fargo at the Designated Address via Certified Mail captioned "NOTICE OF ERROR AND REQUEST FOR INFORMATION" ("NOE #2"). A copy of NOE #2 is attached as ***Plaintiffs' Exhibit 5***.

39. Through NOE #2, the Michels alleged that through Wells Fargo's admitted errors the Michels were caused damage through their expense of attorneys fees and costs in making an appearance in the Foreclosure, in drafting and sending NOE #1, and in attempting to mitigate the

Michels' damages through diligent interaction with Wells Fargo during the loss mitigation processes related to the Application and the DIL documents. See ***Plaintiffs' Exhibit 5***.

40. Through NOE #2, the Michels demanded that, in order to fully correct the errors related to the Loan, that Wells Fargo was required to compensate the Michels for such fees and costs in excess of $3,000.00 and made a general demand for Wells Fargo to remit payment in resolution thereof in the amount of $9,000.00. See *Plaintiffs' Exhibit 5*.

41. On or about October 25, 2018, Wells Fargo sent correspondence in response to NOE #2 ("Response #2"), stating as follows:

> [W]e are not aware of any potential attorney cost or funds that were made by the customers to defend themselves against the foreclosure action between the referral date of June 29, 2018, the suspension date of July 20, 2018, and the deed in lieu completion date of August 14, 2018.
>
> If this request for funds, [sic] is in relation to the customers having to hire an attorney to assist them. [sic] We are unable to provide our customers with financial advice. We respectfully decline your request for $9,000.00 to be payable to the customers. We regret we're unable to provide the resolution your requested.

A copy of Response #2 is attached as ***Plaintiffs' Exhibit 6***.

42. Wells Fargo has not taken any further action to fully rectify and correct their errors and make the Michels whole again.

## IMPACT AND DAMAGE TO THE MICHELS

43. Wells Fargo's actions in failing to properly handle the loss mitigation process for the Loan has caused the Michels to incur attorney's fees and costs in making an appearance in the Foreclosure, in drafting and sending NOE #1 and NOE #2 (collectively, the "NOEs"), and in attempting to mitigate the Michels' damages through diligent interaction with Wells Fargo

during the loss mitigation processes related to the Application and the DIL documents, all of which would have been unnecessary but for Wells Fargo's actions.

### PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY WELLS FARGO

44. Wells Fargo's actions are part of a pattern and practice of behavior in violation of the Michels' rights and in abdication and contravention of Wells Fargo's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

45. At the time of the filing of this Complaint, Wells Fargo has had at least Seventeen Thousand Three Hundred Fifty (17,350) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (https://www.consumerfinance.gov/data-research/consumer-complaints/).

46. The Michels have reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Wells Fargo against other borrowers. In particular, the Michels have reviewed the fifteen (15) consumer complaints attached hereto and identified as *Plaintiff's Group Exhibit 7*. The date, details, and a narrative disclosed by each consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Wells Fargo has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

### COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.35(e)

**(Failure to properly respond to the NOEs)**

47. The Michels restate and incorporate all of their statements and allegations contained in the preceding paragraphs, *supra*, in their entirety, as if fully rewritten.

48. 12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

49. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

50. Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards the borrower's mortgage loan.

51. 12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

    (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

    (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

52. Each of the NOEs meet the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). See *Plaintiffs' Exhibits 3 and 5*.

53. Wells Fargo received each of the NOEs at the Designated Address. See *Plaintiffs' Exhibits 3 and 5*.

54. Through Response #1 and Response #2 (collectively, the "Responses") Wells Fargo admitted that Wells Fargo committed the errors alleged through the NOEs related to the Application, the DIL documents, and the Foreclosure. *See Plaintiffs' Exhibits 4 and 6*.

55. Wells Fargo did not fully correct the errors alleged in the NOEs through the Responses as Wells Fargo refused to compensate the Borrowers for fees and costs incurred as a direct result of Wells Fargo's errors.

56. Further, in refusing to compensate the Borrowers through Response #2, it is clear that Wells Fargo did not perform a reasonable investigation into such and into the errors alleged through NOE #2 as Wells Fargo stated through Response #2 that they "are not aware of any potential attorney cost or funds that were made by the customers to defend themselves against the foreclosure action between the referral date of June 29, 2018, the suspension date of July 20, 2018, and the deed in lieu completion date of August 14, 2018" despite the fact that these fees were *explicitly identified and explained in NOE #2 and were the express and explicit subject of NOE #2*. See *Plaintiffs' Exhibits 5 and 6*.

57. Wells Fargo's failure to fully correct the errors alleged through the NOEs, or, alternatively, to perform a reasonable investigation into such errors, constitutes a clear, distinct violation of 12 C.F.R. § 1024.35(e).

58. Wells Fargo's actions caused the Michels to suffer actual damages as further described, *supra*, including attorney's fees and costs in making an appearance in the Foreclosure, in drafting and sending the NOEs, and in attempting to mitigate the Michels' damages through

11

diligent interaction with Wells Fargo during the loss mitigation processes related to the Application and the DIL documents, all of which would have been unnecessary but for Wells Fargo's actions.

59. Wells Fargo's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Michels' rights.

60. As a result of Wells Fargo's actions, Wells Fargo is liable to the Michels for actual damages, statutory damages, costs, and attorney's fees.

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs Jason P. Michel and Melissa J. Michel respectfully request that this Court enter an order granting Judgment against Defendant Wells Fargo Bank, N.A. as follows:

a. For actual damages against Defendant as to all allegations contained in Count One;

b. For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant for each violation of 12 C.F.R. § 1024.35 as alleged in in Count One;

c. For costs and reasonable attorney fees against Defendant as to all allegations contained in Count One; and,

d. For all other relief this Court may deem just and proper.

Respectfully submitted:

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)\
DannLaw
P.O. Box 6031040
Cleveland, OH 44103

Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Jason P. Michel and Melissa J. Michel*

## JURY DEMAND

Plaintiffs Jason P. Michel and Melissa J. Michel hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Marc E. Dann
Marc E. Dann (0039425)
DannLaw
*Counsel for Plaintiffs Jason P. Michel and Melissa J. Michel*